**IT IS SO ORDERED.**

**Dated: 10:46 AM November 14 2008**

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 07-53303 |
| | ) | |
| LORNA SULLEN | ) | CHAPTER 13 |
| CHAD SULLEN, | ) | |
| | ) | JUDGE MARILYN SHEA-STONUM |
| DEBTOR(S) | ) | |
| | ) | **OPINION AND ORDER RE: SALLIE** |
| | ) | **MAE'S MOTION FOR CLARIFICATION** |
| | ) | **OF PLAN [DOCKET #42] AND DEBTORS'** |
| | ) | **REPLY** |

This matter came on for hearing on July 31, 2008 on a "Motion for Clarification of Plan" [docket #42] filed by Sallie Mae, Inc., on behalf of United Student Aid Funds, Inc. ("Sallie Mae"). Appearing at the hearing were Matthew Schaeffer and Robert Berner, counsel for Sallie Mae; David Mucklow, counsel for debtors and Keith Rucinski, counsel for the standing chapter 13 Trustee (the "Trustee"). During the hearing, counsel for debtors requested additional time in which to further research the issue of whether or not his clients could modify the interest due on the student loan claims held by Sallie Mae. Based upon that request and other matters discussed at the hearing, the Court set a post-hearing briefing schedule. Sallie Mae's supplemental brief was filed on September 9, 2008 [docket #48] (that brief, together with the "Motion for Clarification of Plan" will be

collectively referred to herein as the "Motion for Clarification") and debtors filed their reply on September 26, 2008 [docket #50].[1]  The matter was then taken under advisement.

## I. BACKGROUND

Debtors filed their chapter 13 bankruptcy petition on October 12, 2007.  On their Schedule F - Creditors Holding Unsecured Nonpriority Claims debtors listed Sallie Mae as holding 18 claims for student loans owed jointly by both debtors.  The deadline for filing proofs of claim in this case was set at March 5, 2008.

Debtors filed their chapter 13 plan on October 18, 2007 [docket #12] (the "Plan").  The Plan conforms generally to a standardized plan developed by the Trustee and includes, *inter alia,* the following provisions:

> 9.  GENERAL UNSECURED CLAIMS
>
> Unsecured Creditors shall be paid 1.5 percent of timely filed and non disputed general non-priority unsecured claims.
>
> 12.  SPECIAL PROVISIONS
>
> Creditors who have co-signors, co-makers or guarantors ("Co-Obligors") from whom they are enjoined from collection under 11 U.S.C. Section 1301, shall file their claims and payment of the amount specified herein (including valuation) or in the Proof of Claim to the creditor shall constitute full payment of the debt as to the Debtor and any Co-Obligor.  No interest accruing after the filing of the petition shall be allowed.  No collection activities of any kind shall be taken against any Co-Obligor pursuant to 11 U.S.C. Section 1301.

---

[1] Pursuant to the Court's directive at the hearing, debtors were required to file their reply by not later than August 29, 2008.  Debtors did not file a motion for leave to file a late pleading but instead set forth in their late-filed reply that "due to the complicated issues raised and the significant amounts of time and research required to read and understand the numerous cases raised by movant, and the perplexing nature of movant's request, and after several discussions with the Chapter 13 trustee, no Reply could be formulated until now."  Because Sallie Mae has not objected to that late-filed reply, the Court has taken that pleading into consideration in reaching its determination in this matter.

The Plan contains neither a general reference to educational loan claims nor a specific reference to student loan claims held by Sallie Mae. The certificate of service attached to the Plan shows that Sallie Mae was served with a copy of the Plan at two separate addresses and there has been no challenge to Sallie Mae's timely receipt of a copy thereof.

On November 15, 2007 Sallie Mae filed 17 separate proofs of its holding unsecured nonpriority claims in this case. No objections to those proofs of claim were ever filed. There were also no objections filed to confirmation of the Plan and it was confirmed by an Order entered on January 7, 2008 [docket #22]. To date there has been no adversary proceeding filed in relation to this case challenging the discharge, pursuant to 11 U.S.C. § 523(a)(8), of the student loan obligations owed by debtors to Sallie Mae.

## II.  DISCUSSION

Through its Motion for Clarification, Sallie Mae claims that paragraphs 9 and 12 of the Plan are ambiguous and it requests that this Court enter an order clarifying those paragraphs "consistent with applicable law."

> The Student Loan is non-dischargeable regardless whether other unsecured claims are discharged upon payment of 1.5% of the claim. Sallie Mae is also entitled to the accrual and payment of pre-petition and post-petition interest. Further, Sallie Mae is entitled to apply any payments received in this Chapter 13 in accordance with applicable non-bankruptcy law. Unless so clarified, the Plan could be construed in a manner which would deny Sallie Mae due process and conflict with applicable law with respect to the discharge of student loans, including Sallie Mae's right to the accrual and payment of pre-petition and post-petition interest. Moreover, unless the Plan is clarified in a manner consistent with applicable law, the Plan provisions are void and Sallie Mae is entitled to relief from judgment under Fed. R. Civ. P. 60. . . .
>
> Sallie Mae does not, however, want to interfere with the Plan, the Plan process, or the Confirmation Order. Therefore, Sallie Mae simply requests that the Plan be clarified in accordance with applicable law.

Motion for Clarification of Plan [docket #42] at pg. 4. Sallie Mae's concerns over the language used in the Plan deal with (1) the overall dischargeability of the student loan debt owed to it by debtors and (2) the accrual, payment and dischargeability of interest and other charges due on such debt. The Court will address each of those concerns separately.

### A.  OVERALL DISCHARGEABILITY OF THE STUDENT LOAN DEBT

Pursuant to § 523(a)(8) of the Bankruptcy Code, educational loans are not dischargeable in bankruptcy "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." Pursuant to Federal Rule of Bankruptcy Procedure 7001(6), an adversary proceeding includes "a proceeding to determine the dischargeability of a debt."

At least one circuit court has held that a debtor may successfully discharge an educational loan through a "declaration" in a chapter 13 plan and without the filing of an adversary proceeding. *See, e.g., Espinosa v. United Student Aid Funds, Inc.*, ___ F.3d ___, 2008 WL 4426643 (9th Cir. October 2, 2008); *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir. 1999). Such "discharge by declaration" has been permitted, however, only when: (1) the plan specifically contains a "discharge by declaration" provision;[2] (2) no objection to the "discharge by declaration" is lodged; (3) the plan is confirmed and (4) debtor ultimately receives a chapter 13

---

[2]  For instance, the "discharge by declaration" provision that was upheld by the 9th Circuit in *In re Pardee* set forth the following:

> The Debtor has two separate obligations for student loans which are as follows:
>
> (1) . . .
>
> (2) **Great Lakes Higher Education,** 2401 International Way, Madison WI 53704 in the amount of $26,235.00. This obligation was incurred by Robert McKnight Pardee and [is] in default. Great Lakes Education shall be paid through the Plan and *Great Lakes Higher Education shall receive the total amount of $26,235.00 for its claim and any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the Plan.*

*In re Pardee*, 193 F.3d at 1086 n.5 (emphasis added).

discharge. The Sixth Circuit has specifically addressed, analyzed and rejected such a procedural maneuver. In *Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, the Sixth Circuit was asked to decide whether a debtor could successfully discharge a student loan through the inclusion of a "discharge by declaration" provision in a confirmed chapter 13 plan and without the filing of an adversary proceeding.[3] Its answer was a resounding "no."

> We conclude that the decisions in *Banks and Hanson* represent an evolving majority view that a purported "discharge by declaration" of student loan debt is not only invalid but void and, therefore, subject to being set aside upon a Rule 60(b)(4) motion. In electing to adopt both the reasoning and the holding set out in those opinions, we also echo the bankruptcy court's astute analysis in this case:
>
>> The [finality analysis in *Anderson* and *Pardee*] embodies many of the dangers inherent in winking at due process, which is the cornerstone of justice. First, it ignores the clear intent of Congress and the Judicial Conference in favor of individual judicial legislation. Congress, in the Code, and the Judicial Conference, in the rules, require an adversary proceeding. Second, it enriches and emboldens those who take what is not theirs and legitimizes it with court sanction. Those who push past the edge of propriety in fundamental rights are rewarded.
>>
>> Third, the majority rule violates the entitlement to certainty and consistency and the benefits resulting therefrom, not the least of which is the economic efficiency of being able to plan. A clear rule set forth in the Code and the Rules allows for simple due process. Student loan lenders, who receive tidal waves of mail, can easily prioritize. If it is an adversary proceeding and has a summons, then it is identified for immediate action. The quantity of "notice" that is issued by the bankruptcy system is so overwhelming that it is necessary to have clear rules in order for creditors to know what notices to notice as

---

[3] The provision at issue in the *Ruehle* case set forth the following:

All timely filed and allowed unsecured claims, including the . . . government guaranteed education loans, shall be paid five percent (5%) of each claim, and the balance of each claim shall be discharged. *Pursuant to 11 U.S.C. Section 523(a)(8), excepting the aforementioned educational loans from discharge will impose an undue hardship on the debtor and the debtor's dependents. Confirmation of debtor's plan shall constitute a finding to that effect and that said debt is dischargeable.*

*In re Ruehle*, 412 F.3d at 681 (emphasis added).

> opposed to notices that are deafening legal background noise. The Code and the Rules set forth those clear standards and it is up to the courts to ensure that the lines are not blurred.
>
> Fourth, the issue strikes at the core of American legal values. 'The history of American freedom, is no small measure, the history of procedure. . . . That quote doesn't just sound good. It's true. Every person and entity is entitled to the prescribed level of notice for the process to be due and only thereafter may the coercive power of the government be used against them. Imagine an analogous situation. Assume that a plaintiff files a motion instead of a complaint in United States District Court. The motion demands something, money or a declaratory judgment. Plaintiff obtains no summons and mails the motion via ordinary mail. The court, in the crush of business, erroneously enters an order of default after the purported defendant fails to answer. Years later, defendant discovers that plaintiff has an order that plaintiff owns defendant's house or that defendant "owes" plaintiff $2,000,000.
>
> Years later, the court would not hesitate to set aside such an order. Due process demands a complaint and a summons. The rule is clear. The rule is no less clear with regard to student loans, and so, we must not engage in complex rationalizing to dignify a denial of fundamental rights.

*Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679, 684 (6th Cir. 2005) (citations omitted). *See also Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann),* 505 F.3d 1033 (10th Cir. 2007); *Hanson v. Educ. Credit Mgmt. Corp. (In re Hanson),* 397 F.3d 482 (7th Cir. 2005); *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296 (4th Cir. 2002).

Based upon the foregoing, it is clear that in the Sixth Circuit, the determination of whether an educational loan is dischargeable due to the "undue hardship" provision of § 523(a)(8) can only be accomplished by the filing of an adversary proceeding. In such an adversary proceeding debtors are required to prove (1) that they cannot maintain, based on current income and expenses, a minimal standard of living for themselves or their dependents if forced to repay the loans; (2) that additional circumstances exist to indicate that this state of affairs is likely to persist for a significant portion of

the loan repayment period; and (3) that debtors have made good faith efforts to repay the loans. Fed. R. Bankr. P. 7001(6); *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 680 (6th Cir. 2005); *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler),* 397 F.3d 382, 385 (6th Cir. 2005); *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 623 (6th Cir. 2004); *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir. 1994). *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987).

In its Motion for Clarification of the Plan Sallie Mae cites to the Sixth Circuit's decision in *Ruehle* and even sets forth the exact same language from that opinion that this Court has set forth above. Sallie Mae also attached to its motion a proposed order clarifying the Plan which provides, in part, the following:

> Accordingly, the Court ORDERS that, notwithstanding the confirmation and completion of the Debtors' Plan, any payments on account of Sallie Mae's claim(s), or the discharge of the Debtors, the Student Loans(s), including any pre-petition and post-petition interest and costs or collection, shall be non-dischargeable in accordance with 11 U.S.C. § 523(a)(8). Any payments made on account of the Student Loan(s) in this Chapter 13 shall be applied to the amounts due on the Student Loan(s) in accordance with applicable non-bankruptcy law.

Motion for Clarification of Plan [docket #42] at Ex.C. Notwithstanding the Sixth Circuit's holding in *Ruehle,* Sallie Mae contends that this proposed order is necessary and is not simply a "comfort order" because there exists an actual controversy in this case.

> There is a conflict between the Special Provisions [paragraphs 9 and 12] and Section 523(a)(8). The Court confirmed a plan which includes language that decisions such as *Reuhle* and *Banks* have found to be contrary to Section 523(a)(8). Sallie Mae is not asking the Court to enter an advisory opinion or requesting that the Court simply restate Section 523(a)(8). To the contrary, Sallie Mae is requesting that the Court resolve an actual conflict between the language in the confirmed Plan and Section 523(a)(8).

Supplemental Brief [docket #48] at pg. 5.

Although this Court is empowered to enter an order which would interpret or clarify a prior order, the entry of an order which does nothing but confirm a state of affairs that already exists (a "comfort order") generally serves no useful purpose. Because of the high volume of cases filed in this Court location and the attendant high volume of necessary pleadings that must be docketed in those cases, this Court will not enter a "comfort order" without a clear showing of an extraordinary need for such document. *See In re White Motor Credit Corp.*, 75 B.R. 944, 947 (Bankr. N.D.Ohio 1987) ("This Court is empowered to 'issue any order, process or judgment that is necessary or appropriate to carry of the provisions of this title.' 11 U.S.C. § 105(a). Included, is authority to interpret and clarify prior orders."). *See also In re Dienberg,* 348 B.R. 482, 483 (Bankr. N.D.Ind. 2006) (discussing "comfort orders").

Given the Sixth Circuit's holding in *Ruehle* and the fact that the Plan does not specifically provide for a discharge of the student loan debt owed to Sallie Mae, the Court finds that the proposed order presented by Sallie Mae is, in fact, a "comfort order" to the extent that it addresses the overall dischargeability of the student loan debt owed to Sallie Mae. Because Sallie Mae has not demonstrated an extraordinary need for such document, it will not be entered.

### B. THE ACCRUAL, PAYMENT AND DISCHARGEABILITY OF INTEREST AND OTHER CHARGES DUE ON THE STUDENT LOAN DEBT

In its decision in *Ruehle,* the Sixth Circuit did not specifically discuss the dischargeability of interest and other charges due on educational loan debt. *But see, e.g., Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315 (4th Cir. 2001) (holding that although student loan creditor could not file claims against chapter 13 debtors for unmatured, postpetition interest, bankruptcy statute barring such claims did not "freeze" debtors' student loan obligations; interest continued to accrue during pendency of proceedings for which debtors, absent finding of undue hardship remained

personally liable). As previously noted, during the hearing in this matter counsel for debtors requested additional time in which to research the issue of whether his clients could modify the interest due on the student loan claims held by Sallie Mae. Such a statement by debtors' counsel combined with the very general manner in which the second sentence of paragraph 12 of the Plan is drafted, could conceivably be construed as an attempt by debtors to somehow modify the interest due on the student loan debt owed to Sallie Mae.

In their reply, debtors do not discuss counsel's statement regarding a potential modification of interest. Instead they contend that paragraph 12 of the Plan only addresses the § 1301 co-debtor stay as to consumer debts and they argue that the Motion for Clarification is without merit. Debtors do, however, acknowledge the Sixth Circuit's holding in *Ruehle* and affirmatively state that they are not attempting to discharge *any* portion of the student loan debt owed to Sallie Mae.

> Next, the movant takes aim at the co-debtor provision at the end of the plan in paragraph 12, as an optional provision. As perfectly expressed in the language of the plan, the co-debtor provision is only applicable to consumer debts pursuant to Section 1301. . . . To pin red flags around "student loan debt" as proposed by the movant would constitute "unfair discrimination that violates 11 U.S.C. Section 1322(b)(1) and that flunks the confirmation standard of 11 U.S.C. Section 1325(a)(1)." . . . Moreover, although the government backed student loan debt may have a guaranty feature as in the case of Sallie Mae, there is nothing before the court alleging that the student loans owed to Sallie Mae are in fact "consumer debt.". . . The movant in this case, however, suggests that the language contained in the plan attempts to discharge non-dischargeable student loan debt, i.e. post-petition interest. But there is nothing in the language of the plan even remotely suggesting that. If the student loans are "consumer debt," the trustee would likely schedule the claims for payment in full. That does not appear to be the intent of movant's motion, rather it seeks a declaration that the student loan claims, including post-petition interest, are in fact, completely and totally non-dischargeable, which no one in their right mind disputes.

Reply to Motion for Clarification [docket #50] at pp. 4-5 (citation omitted).

Based upon this affirmative statement by debtors, the issue of whether debtors are attempting to somehow discharge interest or other charges due on the student loan debt owed to Sallie Mae is

-9-

now moot. Every federal court has a continuing duty to ensure that it adjudicates only genuine disputes between parties where the relief requested would have a real impact on the legal interests of those parties. *Libertarian Party of Ohio v. Blackwell*, 462 F.2d 579, 584 (6th Cir. 2006). An issue is moot when it is no longer "live" or the parties lack a legally cognizable interest in the outcome. *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) *citing Powell v. McCormack,* 395 U.S. 486, 496 (1969). The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties in interest *to this particular case*. *Id.* (emphasis added).

An exception to the mootness doctrine exists for issues which are capable of repetition yet continue to evade review. *Libertarian Party of Ohio v. Blackwell*, 462 F.2d 579, 584 (6th Cir. 2006). Such exception does not apply in this case. *Libertarian Party of Ohio v. Blackwell*, 462 F.2d 579, 584 (6th Cir. 2006), *citing Rosen v. Brown,* 970 F.2d 169, 173 (6th Cir. 1992).[4]

---

[4] It is not clear to the Court whether or not the parties attempted to resolve their differences prior to Sallie Mae filing its "Motion for Clarification of Plan." In its supplemental pleading Sallie Mae refers to the Trustee's willingness to enter into an order which would have resolved this issue and indicates that debtors were not also willing to enter into such an order. Supplemental Brief [docket #48] at pg. 3. In their reply debtors note that the Trustee's office uses a "special affidavit" through which debtors can acknowledge that student loans which are not paid in full through the plan are not discharged. Debtors do not, however, indicate whether or not they actually signed such an affidavit in this case. Reply to Motion for Clarification [docket #50] at pg. 6. Based upon the Court's holding as it relates to the effect of the *Ruehle* decision on the overall dischargeability of educational loan debt, the Court hopes that counsel for debtors will attempt to draft any "special provisions" of a plan in a manner that avoids unnecessary issues as to educational loan dischargeability (especially as it relates to interest and other charges due on such debt). The Court further hopes that if an issue about dischargeability of educational loans in a chapter 13 plan does nonetheless arise, debtors and educational loan creditors will diligently work towards a resolution.

-10-

### III. CONCLUSION

Based upon the foregoing the Court finds that the proposed order presented by Sallie Mae is an unnecessary "comfort order" to the extent that it addresses the overall dischargeability of the student loan debt owed to Sallie Mae. The Court further finds that the issue of whether debtors are attempting to somehow discharge interest or other charges due on the student loan debt owed to Sallie Mae is now moot. Accordingly, the Motion for Clarification is hereby denied.

# # #

cc (*via* electronic mail):
KEITH RUCINSKI, Chapter 13 Trustee
DAVID MUCKLOW, Counsel for Debtor(s)
MATTHEW SCHAEFFER, Counsel for Sallie Mae
ROBERT BERNER, Counsel for Sallie Mae